No. ——
First Circuit Appeal

———

THE GUARANTY FINANCE CORPORA-
TION v. J. A. MIRE

———

(Feb. 18, 1925, Opinion and Decree.)
(May 5, 1925, Rehearing Opinion)

———

: (*Syllabus by the Editor.*)

1. **Louisiana Digest—Bills and Notes—
Par. 116.**

One who purchases drafts or "trade ac-
ceptances" before maturity is pre-
sumed to be a holder in due course.

2. **Louisiana Digest—Bills and Notes—
Par. 120, 216, 220.**

The mere fact that lines had been drawn
across the drafts or "trade acceptances"
and had been erased so that they were
not perceptible merely leaving a slight
dent in the paper which could be per-
ceived on close inspection, will not de-
stroy the presumption that the pur-
chaser before maturity is a holder in
due course.

(ON REHEARING.)

3. **Louisiana Digest—Bills and Notes—
Par. 120, 220.**

Apparent erasures on the drafts or "trade
acceptances" all of which remain un-
explained and unaccounted for by the
plaintiff is sufficient evidence to destroy
the presumption that plaintiff is the
holder in due course.

Appeal from the parish of St. Tammany,
Hon. Prentiss B. Carter, Judge.

This is a suit to recover on three drafts
or "trade acceptances". There was judg-
ment for defendant which was reversed
by the Court of Appeal. The former judg-
ment of the Court of Appeal is reversed
and the judgment of the district court
affirmed on a rehearing.

A. J. Finney, of Covington, attorney for
plaintiff, appellant.

S. W. Provensal, of New Orleans, attor-
ney for defendant, appellee.

MOUTON, J. Three trade acceptances,
each for $202.00, were drawn in favor of
the Lawrence Phonograph Corporation on
July 25, 1922. They are signed by de-
fendant, against whom this suit is brought,
on these acceptances by plaintiff corpora-
tion as a holder thereof for a valuable
consideration, before maturity. The de-
fendant denies that plaintiff acquired these
acceptances for value before maturity; ad-
mits his signature thereto, but avers that
it was obtained through fraud and artifice.

T. H. Ward, of St. Louis, examined un-
der commission, says he was secretary and
treasurer to plaintiff corporation in the
year 1922, and that these three drafts or
acceptances were acquired by plaintiff be-
fore maturity for an approximate discount
of about ten per cent. It is therefore
clear from the testimony of this witness
that these acceptances were acquired by
plaintiff before maturity and for value.
These trade acceptances were made pay-
able, respectively, thirty, sixty and ninety
days after July 25, 1922, the date of their
execution, August 16, 1922, before the trade
acceptance for the thirty-day period had
matured, plaintiff corporation wrote a letter
to defendant, Mire, notifying him that it
had acquired these trade acceptances by
purchase from the Lawrence Phonograph
Corporation in whose favor they had been
originally issued. This letter, written at a
time unsuspicious, has the effect of cor-
roborating the testimony of Ward in refer-
ence to the acquisition of these acceptances
by plaintiff corporation before maturity.

In support of his contention that his sig-
nature to these trade acceptances was ob-
tained through fraud and artifice, defendant
claims first, that when the agent of the
Lawrence Phonograph Company asked for

his signature to the contract, he discovered it was in the form of a trade acceptance, that he refused to sign, and afterwards affixed his signature thereto only after the agent had drawn a heavy line across the face of the draft, and had thus destroyed its character of negotiability. He says the agent left with him a piece of paper we find in the record, and which is doubtless a duplicate of the contract, including the trade acceptances.

The letter written by plaintiff corporation to defendant on August 16, 1922, reads as follows:

"Dear Mr. Mire:

"This will be your official information that the Guaranty Finance Corporation has, through purchase, become the owner of your three trade acceptances in the amount of $202.00 each and aggregating $606.00, dated July 25, 1922, and maturing in 30, 60 and 90 days respectively, made payable to the Lawrence Phonograph Corporation. Kindly make all remittances direct to this office or to any bank or trust company in whose hands this paper may be placed for collection."

August 18, 1922, two or three days after the date of this letter, defendant wrote a letter in answer thereto to plaintiff corporation. In that letter defendant says the Lawrence Phonograph Corporation had sent the phonographs on consignment, and that they were to be paid as sold. He also stated the machines were too high-priced to sell in his locality. There is no reference whotsoever in defendant's letter that a cross mark had been drawn over the face of these trade acceptances upon which plaintiff corporation, as purchaser thereof, was demanding payment from him. Appended to his letter we find the following footnote in the same handwriting and in which defendant says:

"If this is a trade acceptance you and the Lawrence representative misrepresented the agency to me."

In this, the claim is that the salesman of the Lawrence Company had misrepresented his agency, but there is no statement, not even the slightest reference, to the erasure which defendant now claims had been made to nullify the negotiability of the instruments sued upon.

In this footnote it must also be observed that defendant writes as follows:

"If this is a trade acceptance, you, etc."

In his testimony defendant says that when the agent wanted his signature he discovered the contract "was in the form of a trade acceptance and he hesitated to sign it", until he was assured the acceptance would be made "void". Again he says: "I know what an acceptance is, and I noticed that and refused to sign it." Further he says: "When the agent made it void (referring to the trade acceptance) by marking out that part, I signed it." From such testimony as this there can be no question that defendant, whose own testimony shows had been in business twenty years, knew what these trade acceptances were. His own evidence and his experience in business life leave no doubt on this proposition. As he unquestionably had knowledge of the character of such paper, how is it possible to explain his statement in the footnote, above referred to, where he begins by saying, quoting: "If this is a trade acceptance, etc." He knew what it was but probably had then in mind the idea he might escape liability by claiming he was ignorant of its meaning. As he well knew otherwise, if as defendant now contends, the acceptance had been erased, there can be no question he would have so stated to plaintiff corporation when written for payments and would have repudiated his liability on these trade acceptances in his letter of August 18, 1922.

A. D. Carr, assistant cashier of the Bank of Slidell, where these trade acceptances had been placed for collection, testified in

the case in reference to the marks which defendant claims destroyed their negotiability. He says defendant came in the bank with his attorney after he was notified of the acceptances, and that after he had stated to the cashier they had been made "void" they "finally located two little marks that could be seen through the signature, which appeared to have been erased." He says the impression of the pencil across the face of the paper had made a dent in it, and that you could plainly see something had been rubbed off or out. At the time he testified he stated, however, that he could not then see any "marks". These trade acceptances, after they had been examined at the bank, as before stated, had remained in its possession, and subsequently in the custody of the court up to the trial of the case. If these marks were so heavy that they had made a dent in the paper, is it possible to believe that they had so much faded away when the case was tried that they could hardly then he detected by the cashier himself? It occurs to us they would have still been there, and easily noticeable.

The fact is that we have carefully scrutinized these trade acceptances which are in this record, and we have been unable to find any traces of these "heavy" pencil marks which defendant claims were drawn for the purpose of destroying their commercial value. Defendant has, therefore, failed to prove that these trade acceptances had been obtained from him through fraud and artifice, unless we are to infer this from the fact that a letter was written by the Lawrence Phonograph Company to the defendant, in which it used the following language:

"Now, Mr. Mire, all that we want is to protect our interests in the trade acceptances of yours which we hold, and we must insist upon some payment being made at once."

It must not be forgotten that the Lawrence Company had endorsed these drafts in favor of plaintiff, and was therefore responsible as an endorser thereon. It certainly had "interests" to protect, and such a letter as this cannot be taken as destructive of the rights of the plaintiff which is shown by uncontradicted evidence to have acquired the paper, before maturity and for value. The evidence shows that there is nothing in common between the two corporations either as stockholders or by way of interlocking directorates. Under such a state of facts it is impossible to hold that the letter so written by the Lawrence Company should have the effect of depriving plaintiff from recovering on this commercial paper acquired in the usual course of trade. It was mainly on this letter that the trial court rejected the demand. This was an error, and the judgment must be reversed. Plaintiff must have judgment for the amount claimed with six per cent interest from maturity of the installments until paid, as provided for in the trade acceptances.

It is therefore ordered and decreed that the judgment appealed from be avoided and reversed; that plaintiff have judgment against defendant in the sum of six hundred and six ($606.00) dollars with interest at the rate of six per cent on $202.00 from August 25, 1922; on a like amount from September 25, 1922, and October 25, 1922, and all cost of court.

---

## ON REHEARING.

LECHE, J. The paramount issue involved in this case is whether the drafts or "trade acceptances" as they are called on their face, are negotiable instruments within the intendment of the law and whether the plaintiff is an innocent third holder for value or a holder in due course. There is no question here as to the liabil-

ity of an acceptor of a bill of exchange for the face value of such bill, to the holder in due course. That is admittedly the law and that law is so well known, that it offers an easy method for the drawer of a bill affected with equities in favor of the acceptor or tainted with fraud, in order to evade the effect of such equities or to close the door to the introduction of evidence of such fraud, to transfer it before maturity to some third person. It therefore becomes the very essence of the enquiry, when such pleas are offered by the defense, to determine whether the instrument is negotiable and whether the holder is one in due course. The evident purpose of the law-maker is to protect innocent persons who in ordinary commercial transactions, acquire negotiable instruments, relying upon the truth of the written engagement contained therein, duly signed by the maker or acceptor. It must also be kept in view that the holder always has the means to prove the facts necessary to show that he is a holder in due course, while the proof to contradict such fact is seldom within the reach of the maker or acceptor.

The evidence in this case shows that the contract between the Lawrence Phonograph Corporation and the defendant, and the three drafts or trade acceptances are printed on one solid sheet of paper, blank spaces being left for dates, signatures and addresses. The contract is at the top of the page, double dark lines entirely across the sheet then follow, and below these is printed a guarantee also followed by double lines. Then come blank spaces for dates, addresses and shipping direction. Then below this, are printed the three drafts separated from the contract by dark lines not perforated but extending entirely across the same sheet of paper. Defendant testified that he at first objected to sign these acceptances, but that the salesman who represented the Lawrence Phonograph Corporation, drew pencil lines across the face of each of the drafts and pursuaded him to affix his signature on the bottom line of each draft as evidence of the fact that he had agreed to take the phonographs in order to sell them on commission. A duplicate printed blank form, showing the contract, the drafts and the pencil lines across the drafts, is contained in the record.

The drafts were severed from the sheet of paper and were sent to the Bank of Slidell for collection. The assistant cashier of that bank testifies that the drafts showed on their face that marks had been erased, that the impression of the pencil had made a dent in the paper and that it could plainly be seen that something had been rubbed out. He says that the mark could be distinguished, that it appeared faint but that the impression of the pencil down against it showed. The Lawrence Phonograph Corporation and the plaintiff are two concerns located in St. Louis, Missouri, and the defendant is a storekeeper at Slidell, Louisiana. The personnel of the two concerns is unknown to defendant. After the maturity of the acceptances, the Lawrence Phonograph Corporation wrote defendant and that letter contains this very signficant language:

"Now Mr. Mire, all that we want is to protect our interests in the trade acceptances of yours which we hold and we must insist upon some payment being made at once."

If the acceptances were held by the Lawrence Corporation at the time that letter was dated, then the plaintiff could only have acquired them after maturity. The letter is not for the purpose of protecting an endorsement but to protect the Lawrence Corporation as holder of the drafts.

It is true that plaintiff is not bound by the letter, but taken in connection with the apparent erasures on the drafts, all of which remains unexplained and unaccounted for by plaintiff, such evidence is sufficient to destroy the presumption that plaintiff is a holder in due course.

The district court so held and on reconsideration we believe the judgment appealed from should be affirmed.

It is therefore ordered that our former judgment be set aside and that the judgment appealed from be affirmed.