No. 11,891.                    . 

48  749
49  744

ADELE R. HAYS, WIDOW, DATIVE EXECUTRIX OF THE LATE HARRY
D. HAYS, VS. G. F. LAPEYRE AND E. H. McCALEB.

48  749
109  365

There are circumstances which place the holder of paper in circulation upon in-
quiry, without direct notice of any infirmity of title.

The policy executed on the life of the deceased was a valid contract, and, as such,
was assignable to the defendants for the amounts held due.

APPEAL from the Civil District Court for the Parish of Orleans.
King, J.

Frank N. Butler for Plaintiff, Appellant, cites: 104 U. S. 775-779;
15 Wallace, 643; 101 Mass. 564; 10 S. E. Rep. 241; 142 U. S. 664;
11 Fed. Rep. 573-577; 11 Atl. Rep. 780; C. N., Art. 160; Marcade,
Vol. 3, p. 253; 21 Wallace, 448; 7 Wallace, 558; 11 Wheeler, 258; 1
An. 178; C. C. 1779, 1893, 1894.

Saunders & Miller for Defendants, Appellees.

Argued and submitted November 22, 1895.
Opinion handed down December 16, 1895.
Rehearing refused April 20, 1896 (WATKINS, J., dissenting).

The opinion of the court was delivered by

BREAUX, J. In April, 1889, the late Harry D. Hays effected a policy
of insurance on his life in the Equitable Life Assurance Society for
the sum of fifty thousand dollars. A short time after the policy was
issued, he became afflicted with a mortal disease. In his condition
of ill health, and being without means, he applied on the 25th of
August, 1889, to a practising attorney for money to pay the premium
of insurance on said policy about to mature. The premiums paid,
interest thereon and fees charged amounted to about five thousand
seven hundred dollars. To secure this amount, the late Harry D.
Hays made an assignment of the policy to the attorney, H. L. Laza-
rus, acting for a client who loaned the amount, and transferred notes,
the latter amounting to more than thirty thousand dollars. He, ,
Hays, became displeased and called at defendant's office; sought
their advice.

They prepared his petition in December, 1890, to the court for judgment to annul and set aside the assignment he had made of this policy and the delivery of notes, in which he in substance alleged that being pressed for funds and his health not permitting him to work and support his family, he had applied to the attorney Lazarus in August, 1889, to whom he afterward assigned his policy, for an advance in money and for a monthly stipend of two hundred dollars to enable him to support his family. That he was, he says, imposed upon; the monthly allowance was not inserted as one of the conditions of the assignment, although he had been led to believe it was.

In the petition prepared for Hays by the defendants, in December, 1890, he alleges that the total amount advanced was only $4150, for which the attorney received notes to the amount of $34,000, the deed of trust and the assignment of the policy of insurance; that Bright's disease, from which he was suffering, was agonizing and torturing, impairing his health, enervating his mind and body and rendering him incapable of correctly understanding the nature and tenor of the documents and notes submitted to him for signature; that these assignees, Lazarus and Weil, had no interest in his life at the time of the assignment.

That the execution of the deed of trust and notes by said Hays for the excess beyond the amount actually advanced to him, to-wit: $4150, with interest from September 4, 1889, was a wagering policy, and said Weiss & Co. and said Lazarus were in equity and good conscience only entitled to the advances made thereon. The assignee, Judge Lazarus, attorney, prior to any suit, consented to cancel the assignment and surrender the notes. upon the payment of the sum already mentioned as claimed by him.

In December of 1890 the defendants advanced him the amount required to effect the compromise with the said assignee. The services of defendants here as attorneys for obtaining a relinquishment of all claims under this assignment and effecting the compromise was fixed at $5000.

In consideration of the advance made to enable him to pay Lazarus, attorney, and the fee of five thousand dollars due to defendants, the late Harry D. Hays transferred and assigned to the defendants his title and interest in the policy he held at the time.

Prior to this assignment he had executed a number of notes, pay-

Hays vs. Lapeyre and McCaleb.

able on demand, amounting in the aggregate to nineteen thousand four hundred and seventy-two dollars.

They were placed by the maker, Hays, in the hands of several persons (his friends), and they were treated by him as if he had received consideration from them, although he had not. Under his instructions, these notes were placed by the respective holders in the hands of different attorneys for collection or sale.

They were acquired, by a practitioner at the bar, for less than fifty cents on the dollar of their face value.

Afterward, to-wit: on March 3, 1890, he, the maker, Hays, executed and delivered to the holder of these notes, Fergus Kernan, a document admitting their binding character, and assigning his life insurance policy to secure their payment.

In February, 1891, the said assignee of these notes was a party to an authentic deed fixing his interest in the policy securing the notes held by him at two-fifths and the remaining three-fifths to the defendants, and thereby Hays secured time after the transfer, and he, Hays, admitted that the notes were held, as just stated.

Another note was subsequently executed by Hays and placed in circulation. It found its way into the hands of an attorney, who threatened to bring suit and to seize and have sold the insured's interest in the policy. This note, among the number, we identify as the Darton note.

On the 10th day of January, 1891, the defendants purchased these, the Kernan notes, for about $11,175, and the holder surrendered to them the life policy of $50,000, and from that time the defendants were in full possession. With interest, the amount collected was $50,125.

The following are credits admitted by the plaintiff:

| | |
|---|---|
| By cash paid first assignee | $5,726 62 |
| By cash paid for $19,472.18 of Hays' notes | 11,175 00 |
| Cash advanced to and for account of Hays | 14,770 00 |
| Cash paid for the Darton note | 2,113 36 |
| Cash deposited in registry of court to the credit of the succession of Hays | 3,428 57 |
| Total interest account admitted is | 4,373 55 |
| Two items | 25 00 |
| Total credits | $45,574 19 |
| Balance claimed as due at the time of statement | 4,550 81 |

The defendants claimed at least one amount, additional, paid by them, we do not find, and which, if not already credited, we think should be carried to their credit, viz.: five hundred dollars paid attorney's fee in suit to collect the policy.

The facts, in regard to the assignment (the first in order of date), are, as already stated, that after the party (Lazarus) sued for the policy had expressed willingness to surrender the policy assigned to him for the amount the assignor, Hays, was willing to pay; he, Hays, did not have the amount required; it was then that the defendants made an advance which amounted with their fee, not contested, to more than eleven thousand dollars.

To that amount the plaintiff does not question the validity of the transfer.

The complaints relate principally to the notes identified as the Kernan notes and the note held by Darton, all subsequently transferred to defendants by the respective holders.

As to these, it is alleged that they were issued without consideration; that defendants acquired them with full knowledge of all the circumstances under which they were issued.

The record discloses that a dissension arose between the defendants and the assignee, F. Kernan, Esq., the former, contended that the latter should pay forty per cent. and they sixty per cent. of the premiums. The defendants finally offered to sell their interest to Kernan; he stated that his means did not permit him to buy, and he in turn made a proposition to sell to them, which they accepted, and after some delay, the sale was completed.

They give as the reason for making this purchase of these notes, that that they had disbursed a large amount for Hays, some $11,100, and that their object was to get possession of the policy. They testified that the statement to them by Kernan, the holder, and by Hays and by Mordecai, who acted for Hays in negotiating these notes, was that they were notes representing debts which Hays had contracted while he was in some canning factory business, in which he failed, and that Kernan, the holder, had purchased these notes from different creditors who held them from Hays.

The transferror of these notes, Kernan, at the same time transferred to the defendants his interest in the assignment of the life insurance policy.

In these assignments no mention was made of premiums, or of the necessity of making provision for their payment. It was manifest that the insured was unable to pay them, and that to keep the policy alive the assignee would have to pay the premiums as they became due.

During the life of the policy, from the spring of 1889 to March 30, 1894, five annual premiums, each two thousand four hundred and fifty dollars in amount, aggregating twelve thousand two hundred and fifty dollars, were paid by the assignees, not a cent was paid by the insured Hays.

It appears of record that the defendants were aware of the extreme illness of the insured Hays and of the mortal nature of his disease, and that he had no property or resource of any kind, save his life policy. Subsequently, his health improved, and it was reported that he had recovered from the severe attack which physicians had pronounced incurable. The improvement was temporary. In March, 1894, he died, leaving a will containing the following, " There are some outstanding notes against which I request my wife to pay as the law directs." These were the notes held by the defendants, regarding which one of the defendants testified as follows:

Question. " Was there any agreement between yourself and Mr. Hays as regards the amount that you should claim under the pledge of the policy to you on those notes that you acquired from Kernan? "

Answer. "Well, we understood that we were to claim the full amount of the notes; and they were to be payable out of the policy after his death, an uncertain event, it is true. "

Judgment was pronounced for the defendants, rejecting plaintiff's demand. The plaintiff prosecutes this appeal.

The transactions whereby the defendants became the owners of these claims were open and direct; there was no disposition manifested to take undue advantage; they were endeavoring in a legitimate manner to protect their interest, and evidently believed that the maker of the notes, Hays, had received adequate value.

In the act of compromise annulling the first assignment made of the policy by the insured, there is reference to the claim here, general in terms it is true, yet sufficient to excite and put on inquiry.

Direct and express notice is not always indispensable to take notes out of the rule of commercial law and cut off the equities.

When the circumstances are such as to bring a particular case under the operation of that rule the maker of the note is legally entitled to insist upon its application regardless of the question of actual knowledge on the part of the purchaser of the note.

48

We pass to the next ground urged:

The defendants can not take more than their investments from the life insurance policy.

It is but justice to state that the transactions in regard to the policy were intended by the defendants to be fair and just.

Owing to favorable circumstances about twenty-nine thousand dollars have been realized by the succession, for which no actual value was paid by the insured.

There has been considerable discussion and diversity of judicial opinion upon the subject here involved. The defendants refer to several decisions holding that a valid policy of insurance effected by one upon his life is assignable like any ordinary *chose in action*, and they contend that, as holders of the notes of the insured prior to maturity, they had an interest in the whole policy. .

In regard to the first proposition, in our view, if a policy is invalid when taken out by one who has no interest in the life of the assured, the assignment of a policy to one without interest is equally as invalid. The reason for holding the former invalid should invalidate the latter.

Mr. Justice Field, in *Warnock vs. Davis*, 104 U. S. 779, as organ of the court, upon that subject said:

"It is not easy to define with precision what will in all cases constitute insurable interest.

"It may be stated generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. * * *" But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit from the continuance of the life of assured."

These principles have been re-announced in subsequent cases: Insurance Company vs. Luchs, 108 U. S. 503; New York Mutual Life

Insurance Company vs. Lewis, 15 Wal. 643; Cammack vs. Armstrong, 117 U. S. 597.

In the last case, the learned justice said, "that an assignment of the policy to be valid, must be made for valuable consideration."

In the following cases the decisions of the Supreme Court of the United States have been followed: Stevens vs. Warren, 101 Mass. 564; Cooper vs. Shaeffer, 11 Atlantic Reporter, 548; Roller vs. Moore, 10 Southeastern Reporter, 241, and authorities cited.

Reasoning from the premises of the defendants, these decisions do not apply; they claim that they were creditors for the whole amount for which the assignment was made, and plead the face value of their notes.

But, in our opinion, while they have a right to their fee, advances and interest, they are without the benefit of the law applying to negotiable instruments prior to maturity.

It is true that, technically, these notes were delivered prior to maturity, but they were payable on demand; the maker had informed the defendants that he was much pressed for payment by the holders; they were held for collection from the proceeds of the policy, and all the transactions were directed to the collection to be made from the policy, and it is conceded that this was all that the holders expected to realize.

Where a note is made for a special purpose, or taken to be collected exclusively from a policy of insurance under the circumstances of this case, we think it is taken out of the rule which governs negotiable instruments, in so far as relates to the equities.

The defendants are entitled to their fees and to all they have advanced, and all they have paid for the claim they hold and interest. Their demand for the remainder, after these will have been paid, is rejected.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed, annulled and avoided. It is further ordered, adjudged and decreed that plaintiff recover judgment for the sum of fifty thousand one hundred and twenty-five dollars, less all advances, also amounts paid as transferees of the notes, and fee and interest as already stated, and that the case be remanded to the District Court and a judgment entered in accordance with this decree.

The defendants and appellees to pay costs of both courts.

DISSENTING OPINION ON APPLICATION FOR REHEARING.

WATKINS, J. Notwithstanding I concurred in the opinion and de-cree of the court when first rendered, more mature deliberation upon the questions-involved have influenced me to believe that the ends of justice would be best subserved by an affirmance of the judgment of the district court in favor of the defendants.

Two propositions are presented for our consideration in reaching a conclusion in this case, viz.:

1. Whether or not a policy of life insurance which is made payable to the insured, his heirs and legal representatives, is a good com-mercial collateral security.

2. And if it is not, whether the defendants acquired the Kernan notes under circumstances warranting their recovery of their face value from the succession of Hays as maker thereof.

If such a policy of insurance is a good commercial collateral, such as the deceased had a legal right to pledge to a stranger, defendants as third holders of his commercial obligations, necessarily occupy just as favorable a situation as the first taker; but if not, have not the defendants the right to recover from the succession of the maker the face value of those notes, independently of the pledge of the in-surance policy, they being ordinary creditors of the deceased on that score?

The transaction simply stated is as follows, viz.:

In March, 1891, the defendants purchased from Fergus Kernan six notes which Hays had issued and theretofore placed upon the mar-ket, aggregating in amount $19,472.18, for the price of $11,175, whereby Kernan was fully reimbursed his outlay; and the defendants took his place in the contract with Hays—the policy of insurance on Hays' life being thereto annexed as collateral security.

The defendants kept the premiums paid up and the policy in force during the lifetime of the insured, and at his death they collected the full amount from the company, and, on settlement with the plaintiff representing the succession, they claim the right to retain the full amount of said notes.

This demand of the defendants is resisted by the widow on the ground that the transaction between them and her deceased husband was of the character of a wagering contract, which is not enforce-able in law beyond the limit necessary for their full reimbursement from the avails of the policy.

This theory was adopted by the court in its opinion on the authority of the following cases, viz.: Warnock vs. Davis, 104 U. S. 779; Insurance Co. vs. Luchs, 106 U. S. 503; Cammack vs. Lewis, 15 Wallace, 643; New York Mutual, etc., vs. Armstrong, 107 U. S. 597; Stevens vs. Warren, 101 Mass. 564; Cooper vs. Shaffer, 11 Atlanta Rep. 548; Raller vs. Moore, 10 Southeastern Rep. 241. And the opinion announces the conclusion of the court to be that where a note is made for a special " purpose, or taken to be collected exclusively from a policy of insurance under the circumstances of this case, we think it is taken out of the . rule which governs negotiable instruments in so far as it relates to equities.

"The defendants are entitled to their fees and to all they have paid for the claim they hold and interest. Their demand for the remainder, after these will have been paid, is rejected."

I have examined with care the cases of Warnock vs. Davis and Cammack vs. Lewis—the others I could not find by the references given—and my conclusion is, that they are not applicable to the case at bar. The distinguishing feature of the case of Warnock vs. Davis is, that the engagement between the party insured and the Trust Company *antedated* the issuance of the policy of insurance, and the insured assigned the policy to the Trust Company *on the date of its issuance, less one-tenth* which he retained; and the Supreme Court very correctly held that " *such a policy* would constitute what is termed *a wager-policy*, or a mere speculative contract upon the life of the assured with a direct interest in its termination."

The point made and decided in Cammack vs. Lewis was the same as shown by this statement of the opinion, viz:

"To procure a policy for three thousand dollars to cover a debt of seventy dollars is of itself a mere wager."

It is quite evident that the court in those cases, exclusively, dealt with contracts entered into between the parties, *antecedent* to the issuance of policies of insurance; and, finding them to be circumstanced as stated, declared that the *policies* were wager-policies.

These opinions have, in my opinion, no application to contracts of the class we have under consideration, which were made long *subsequent* to the issuance and delivery of the policy to the insured.

And not only was the contract between Kernan and the defendants made *long subsequent* to the issuance of the life policy to Hays, the insured, but the notes of Hays which the defendants took from

Kernan, were the identical notes upon which Hays had previously realized over eleven thousand dollars on the faith of this policy, and in addition to the payment of the premiums which had been paid by others in order to preserve the the life of the policy, *prior* to defendants' acquisition thereof.

The legality and binding force of such contracts have frequently been maintained by the New York Court of Appeals, and they have held that " a *valid* policy of insurance effected by a person on his own life is assignable like an ordinary *chose in action*, and that the assignee is entitled, upon the death of the assured, to the *full sum payable*, without regard to the consideration given for the assignment or to his possession of any insurable interest in the life of the assured." St. John vs. American Mutual Life, etc., 13 N. Y. 31; Vallon vs. National Loan Fund, etc., 20 N. Y. 32; Olmstead vs. Keys, 85 N. Y. 593.

The rulings of the New York court are in keeping with those of the highest courts of other States, as is instanced in the following reports: Ashley vs. Ashley, 3 Simmons, 149; Mutual Company vs. Allen, 138 Mass. 24; Eckel vs. Renor, 41 Ohio St. 232; Martin vs. Stebbins, 126 Ill. 387; Fitzpatrick vs. Insurance Co., 56 Conn. 116; Clark vs. Allen, 11 Rhode Island, 439; Rittler vs. Smith, 70 Maryland, 261; Murphy vs. Red, 14 So. Rep. (Miss.) 761.

Indeed, the Supreme Court in *Warnock vs. Davis* refer to some of the New York cases, and say:

"It must be admitted that they are sustained by many other adjudications."

In those opinions, the courts had under consideration *assignment* of policies made by persons insured to strangers; and such assignments were upheld and maintained as good and valid in law.

On the same principle, they would have undoubtedly held that a pledge of such policies as collateral security would have been equally good and valid.

The language employed by the Massachusetts court in the leading case can be appropriately cited here:

"In Mutual Life Ins. Co. vs. Allen, 138 Mass. 24, the Supreme Court of Massachusetts, * * * after referring to the *dicta* in Cammack vs. Lewis, 15 Wall. 643, and Warnock vs. Davis, 104 U. S. 775, and showing that it was *not decided in either of those cases that all* assignments for life insurance policies without interest *are illegal*,

said, that the right to receive money on the death of another is assignable, at law or in equity, will not be questioned.   It is true that every person who is in expectation of property at the death of another has an interest in the death, but it does not follow and it is not true that the law does not allow the possession and assignment of such expectations.    *   *   *    We see nothing in the contract of life insurance which will prevent the assured from selling his right under the contract for his own advantage, and the fact that the assignee has no insurable interest in the life insured is neither conclusive nor *pirma facie* evidence that the transaction was illegal. In the well considered case of Clark vs. Allen, 11 R. I. 439, the Supreme Court of Rhode Island used this language: "It is said that such assignment, if permitted, may be used to circumvent the law. But it does not follow that such an assignment is not to be permitted at all, because if permitted it *may* be abused.   Let the abuse and not the *bona fide* use be condemned and defeated.   The truth is, it is one thing to say that a man may take insurance upon the life of another *for no purpose except as a speculation or bet on his chances of life*, and may repeat the act *ad libitum;* and *quite another thing to say that he may purchase the policy as a matter of business, after it has once been duly issued under the sanction of the law, and is therefore an existing chose in action or right of property*.   There is in such purchase, in our opinion, no immorality and no imminent peril to human life.   We should have strong reasons before we hold that a man shall not dispose of his own. Courts of justice, while they should uphold the great and universally recognized interests of society, ought, nevertheless, to be cautious about making their own notions of public policy the criterion of legality, lest, under the semblance of declaring the law, they, in fact, usurp the functions of legislation."    (My italics.)

In the recent case of *Stuart vs. Sutcliffe*, 46 An. 240, we have this identical principle affirmed.

In that case, as in this, the legal representatives of the deceased policy-holder sued Kline as possessor thereof under a contract of pledge securing the payment of certain notes of the deceased, claiming the proceeds which had been collected of the insurance company.

In the opinion it is said:

" Plaintiffs do not make claim as beneficiaries of said policy, but as the executors and heirs of deceased; hence, for all purposes of this case, they occupy exactly the same situation as that occupied

by the deceased, and can invoke no other cause of nullity than such as he could have urged while living."

Having announced the foregoing postulate the court states its conclusion to be, that it " has for many years maintained the assignability of such policies of insurance, as that of an incorporeal right "— exactly in keeping with the State decisions we have quoted above.

In Succession of Hearing, 26 An. 326, the court distinctly and pointedly said:

" A man may take out a policy of insurance on his life, in the name of any one, or having taken it out in his own name, he may, with the consent of the insurers, transfer it to whom he pleases."

In Succession of Richardson, 14 An. 1, the court gave effect to an assignment of a policy made by the insured upon the day of its issuance.

The court distinguished a policy which is made payable to the heirs and legal representatives of the insured, like the one involved in the case of *Stuart vs. Sutcliffe* and in this case, from one payable to some third person as beneficiary—citing Succession of Bofenschen, 29 An. 711; Putnam vs. Insurance Co., 42 An. 739, and other cases.

To my thinking the foregoing authorities are conclusive as to the assignability of the life insurance policy of Hays; and, consequently, defendants are quite as much entitled to hold and retain the full amount of the Kernan notes out of the proceeds collected as Klein was allowed to hold the proceeds of the Stuart policy, as such a policy is in all respects a good commercial collateral for the debts of the insured.

Entertaining these views, I respectfully recall my assent to the opinion of the majority of the court and file this as my dissenting opinion.