Nos. 868-976

First Circuit

## TRADERS' SECURITIES CO. v. DUTSCH

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Rehearing Granted.)
(March 8, 1932. Opinion and Decree on Rehearing.)
(April 25, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

A. J. Finney, of Covington, attorney for plaintiff, appellee.

Harvey E. Ellis and Frank B. Ellis, of Covington, attorneys for defendant, appellant.

MOUTON, J. An exception of no cause of action was maintained in this case by Judge Prentiss Carter which was overruled by this court, 14 La. App. 591, 130 So. 361, remanding the case for trial on the merits.

The following opinion was rendered on the merits by Judge Ott, the successor of Judge Carter on the district bench, quoting:

"It is also urged by defendant that, as the plaintiff sues in the name of the Traders' Securities Co., Inc., a corporation organized under the laws of Missouri, and the copy of the charter filed in evidence shows that the correct name is, Traders Securities Company, that plaintiff has no right of action to recover on these acceptances. Article 432, Civil Code, provides that corporations must sue in their corporate names, but that a slight alteration is not material. See, also, Town ex rel. Thompson v. Andrus, 37 La. Ann. 699. As plaintiff shows that it is the holder of the obligations sued on, this slight variation in the name given in the petition and that shown by the charter is not material.

"Defendant in his testimony says that he thought he was signing an order for the jewelry; that he did not read the documents which he signed, although it appears that he can read and write; that he imagined that the contract was attached to the drafts that he signed or accepted; that he paid the first draft because he had not then found out it was all a fake; that later on he shipped the jewelry back to the Arch Mfg. Co. as it was no good.

"The testimony of Frank Coffman, was taken for plaintiff by deposition. He is President and Treasurer of the corporation, and he testifies that he purchased these four trade acceptances on April 26th, 1928, together with one other, from the Arch Mfg. Co. as a matter of investment, with a discount of ten per cent, that the first acceptance was paid; that his company is the holder and owner of these acceptances for value and before maturity in good faith; that neither he nor his company had any knowledge when the purchase was made of any defect in these negotiable instruments; that the four acceptances sued on have not been paid; that he looked up the rating of defendant and found that his credit standing was good; that the acceptances were purchased without recourse on the Arch Mfg. Co. because of the liberal discount which he received. He annexed to his deposition the acceptances, a copy of the charter, and the original cancelled check which his company gave in payment of the acceptances.

"There is nothing in the testimony to show that plaintiff is a holder in bad faith, without value, other than mere suggestions in the answer and some slight suspicious circumstances connected with the appearance of the drafts indicating that they might have been detached from another paper by perforated lines, and the further fact that plaintiff purchased without recourse against the original holder. The cancelled check produced by plaintiff and filed in the record shows that the plaintiff paid cash for the drafts on April 26th, 1928, the sum of $268.20. This is the exact amount of all five acceptances, less the 10% discount allowed plaintiff. It is therefore, clear that plaintiff is a holder for value. The mere fact that paper is purchased without recourse, does not make the holder in bad faith. Joyce, Defenses to Commercial Paper, Second Ed. Par. 647. The taking of commercial paper endorsed without recourse, does not in itself render the purchaser in bad faith nor deprive him of the rights of a holder in due course.

"The only other circumstance is the claim that the drafts show on their face that they were detached from a contract or some other paper. The defendant signed his name at least five times, and admits that he did not know the nature of the documents signed, but thought he was signing an order for jewelry. He imagined that these drafts were attached to the contract, but cannot testify positively to that effect. He was clearly negligent in failing to read the document signed. However, inequitable as it may appear to shut out the defense which the defendant has as against the vendors of the jewelry, the courts are powerless to give him relief against the plaintiff who appears to be the holder of the negotiable paper signed by defendant, in due course and for value. The plain terms of the negotiable instrument law will not permit it to be done. Sections 51 to 59, Act No. 64 of 1904.

"The case of Guaranty Finance Corp. v. Mire, 2 La. App. 794, presented many features as appear in this case. The defendant in that case refused to sign the trade acceptances annexed to or forming part of the contract of purchase, and a line was drawn across the face of the drafts to make them non-negotiable before defendant would sign. The Court of Appeals first held that the plaintiff was holder in due course, but on rehearing reversed the ruling, and held the plaintiff was not a holder in due course in good faith. The opinion on rehearing was based on the fact that the defendant proved in that case that the trade acceptances were part of the contract when signed and that they were detached for the purpose of placing plaintiff in the position of holder in due course of a negotiable instrument. In the present case, there is no proof of this in the record and no copy of the contract which defendant signed. In that case the evidence further showed that lines had been run through the drafts, which, the court held, was an indication of something wrong, and sufficient to take plaintiff out of the category of holder in due course. Besides in that case the original vendor-transferor of the drafts had written defendant after the maturity of the drafts stating that all they wanted was their interest protected in the drafts which they held. From this the court concluded that the plaintiff acquired after maturity. See, also, another pertinent case recently decided, Stevens v. Brown, 9 La. App. 463."

In that opinion, Judge Ott has given a fair recital of the pertinent facts, and has correctly applied the law to the issues involved herein.

The trade acceptances, referred to in the opinion, were made payable to the Arch Manufacturing Company. They are indorsed to order of plaintiff, the Traders' Securities Company, Arch Manufacturing Company, per W. A. Blackstad. The proof shows that Blackstad, Inc., was a Missouri corporation engaged in the wholesale jewelry business in 1928, when these trade acceptances were given by defendant. It also appears that the Arch Manufacturing Company was simply a trade-name used by the Blackstad Corporation. Counsel for defendant contends that the Arch Manufacturing Company had no existence, and could not have appeared in a court of this state to prosecute its claim against defendant.

In the case of Smith v. Williams, 152 La. 948, 94 So. 859, M. M. Smith sued under a trade-name. The court, in reviewing sections 2668 and 2669, Revised Statutes, also Act No. 64 of 1918, on this subject, said:

"A person may transact business and execute his contracts under any name he may choose to adopt, provided, of course, no fraud be committed."

The exception was overruled, the court saying:

"Whether there was any fraud committed by plaintiff in entering into a contract under an assumed name is a matter of defense and does not arise on exception of no cause of action."

It is therefore obvious that business done under an assumed or trade-name is not for that reason stricken with nullity, so as to preclude any recovery in such a case. To the same effect, see Kent v. Mojonier, 36 La. Ann. 259; Wolfe v. Joubert, 45 La. Ann. 1104, 13 So. 806, 21 L. R. A. 772; In re Pelican Ins. Co., 47 La. Ann. 935, 17 So. 427.

Suit could therefore have been brought under the trade-name of Arch Manufacturing Company, subject, however, to the defense of fraud by defendant against recovery for the jewelry.

Plaintiff in this case is not the Arch Manufacturing Company, but appears as the purchaser of these trade acceptances before maturity and for value. It is shown that plaintiff company is a corporation distinct from the Arch Manufacturing Company or the Blackstad Corporation, with which it had no connection whatsoever and no business relations, except as the purchaser of these trade acceptances.

Frank Coffman, president and treasurer of plaintiff company, testifies that the Arch Manufacturing Company and Blackstad, Inc., are one and the same, the trade-name of Arch Manufacturing Company being used by Blackstad merely to carry out its business operations. As before stated, the indorsements on these trade acceptances had been made by William A. Blackstad for the Blackstad Corporation. Coffman says, he saw the by-laws of his company which gave him the authority to make these indorsements, and, it may be appropriate to say here, that there is no evidence in the record to show that these statements of Coffman are not true. It seems to us, under the facts above related, that the transfer of these acceptances was properly authorized, and conveyed title. Coffman testifies that before making the purchase he consulted the rating book of the mercantile agencies, Bradstreet and Dun, where he found that defendant was rated by one of the agencies at from $10,000 to $20,000, with "first rate of credit"; that by the other he was rated from $3,000 to $5,000 "net worth with fair credit." Basing himself on that rating, he says, he bought the paper of defendant believing that at a discount of 10 per cent he was making a good investment for his company. The proof is that he gave the check of his company for the acceptances, less the discount.

It may be said that the discount appears small, but if, on the other hand, he had gotten a liberal discount, it might have been argued that he had obtained the transfer because the acceptances had no value, and were not collectible.

The policy of the law is favorable to the holder of a negotiable paper, and cogent evidence is required to convict him of bad faith. New Orleans Canal and Banking Company v. Samuel Templeton, 20 La. Ann. 141, 96 Am. Dec. 385.

Negotiable notes in the hands of a third person are presumed to have been acquired in good faith, until the contrary is made to appear. Hillard v. Taylor, 114 La. 883, 38 So. 594.

It is a well-recognized fundamental principle that good faith is presumed in all contracts, not only in those affecting negotiable instruments. Fraud is never presumed. Fraud, it is true, may be implied, when the evidence justifies such an inference.

The facts and circumstances, above related, at most, might create a suspicion, but cannot justify this court to imply that plaintiff is not entitled to recover because of the fraud and collusion urged by defendant as a defense, but which is not sustained.

The judgment in favor of plaintiff for the amount claimed with legal interest is therefore affirmed, with all cost of court against defendant.

---

ELLIOTT, J. (dissenting). It is my conclusion that the judgment appealed from is erroneous, and should be reversed, and plaintiff's demand rejected.

To my mind, it seems that the acceptances sued on have not been legally indorsed nor legally negotiated; that the negotiation claimed to have taken place is without effect. If my conclusion is correct, it follows that plaintiff has no more right to collect from the defendant Dutsch than Arch Manufacturing Company would have had.

The acceptances bear on their back what purports to be an indorsement, as follows:

"Without recourse, pay to the order of Traders Securities Company. (Signed) Arch Manufacturing Company, per W. A. Blackstad."

The Negotiable Instrument Law, Act No. 64 of 1904, title 1, article 1, sec. 1, provides that an instrument in order to be negotiable "Must be payable to order or to bearer." These acceptances were drawn payable to order.

Section 8 of the law provides:

"The instrument is payable to order where it is drawn payable to the order of a specified person or to him or his order."

The law in providing that an instrument must be "payable to the order of a specified person or to him or his order," means that the instrument must be drawn payable to some person, firm, or corporation having power to indorse, negotiate, enter into contracts, etc. Arch Manufacturing Company is neither. It is a mere trade-name used by Blackstad, Inc., for the purpose of their jewelry business.

Frank Coffman, president, treasurer of plaintiff, says:

"These bills of exchange were endorsed in my presence on behalf of Arch Manufacturing Company by William A. Blackstad, and he had authority to make such endorsements."

He further says:

"I know that William A. Blackstad had authority to endorse these bills of exchange on behalf of his company, for the reason that I asked for and saw the bylaws of his company which gave him such authority."

But he says further on:

"Arch Manufacturing Company and Blackstad, Inc., are one and the same, Arch Manufacturing Company being merely a trade name used by them."

"That Arch Manufacturing Company is in truth and in fact Blackstad, Inc., which is a Missouri corporation."

"Arch Manufacturing Company is simply a trade name used by Blackstad, Inc."

Arch Manufacturing Company, the nominal drawer and indorser of these acceptances, did not draw nor indorse them. It has no existence, and cannot do anything.

Blackstad, Inc., cannot indorse them using Arch Manufacturing Company as a name in order to do it, because Blackstad, Inc., is a corporation, and must trade, indorse and contract in its own name.

"A corporation must have a name. And it is in that name that it must sue or be sued and do all its legal acts; although a slight alteration in the name is not important."

See Civil Code, article 432, and other laws on the subject.

I therefore take the position that the purported indorsement of these acceptances is not a legal indorsement, such as the law requires in order to effectuate a negotiation.

An instrument that is payable to bearer does not need any indorsement in order to make it negotiable.

The law, section 9, provides:

"The instrument is payable to bearer: * * * When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable. * * *"

According to Mr. Dutsch, he did not know at the time he accepted these instruments that Arch Manufacturing Company was a mere trade-name. He supposed that he was dealing with a person, firm, or corporation. His acceptance having been made without knowledge that the purported drawer, whose indorsement was necessary in order to make the instruments negotiable, was a mere trade-name, his acceptance does not, under the letter of the law, make these acceptances payable to bearer.

It therefore seems to me, that under the situation disclosed, these acceptances were not legally indorsed, negotiated, nor susceptible of such method of transfer, with the result heretofore stated. The cases Shipman v. Bank of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. pages 821-829; and Armstrong v. National Bank, 46 Ohio St. 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep. pages 655-658, have strong bearing on the present case.

It further seems to me that the burden of proof is upon the plaintiff to show that it is a holder in due course, and that such fact does not appear in its favor.

Section 55 of the Negotiable Instrument Law provides:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Section 56:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Section 59:

"Every holder is deemed prima facie to be a holder in due course; but when

it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The Supreme Court, in Lanfear v. Blossman, 1 La. Ann. 148, 156, 45 Am. Dec. 76, quoting from Story on Bills of Exchange, said:

"What circumstances will amount to actual or constructive notice of any defect or infirmity in the title to the bill, so as to let it in as a bar or defence against a holder for value, has been a matter of much discussion and of no small diversity of judicial opinion. It is agreed on all sides that express notice is not indispensable, but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade on the transaction, and to put the holder on enquiry."

In Louisiana State Bank v. Orleans Navigation Company, 3 La. Ann. 294, the court says:

"Express notice is not necessary to charge the holder with what the law considers to be notice of any defect or infirmity in a note or bill, so as to let in a defence against a holder for value; it is sufficient, if the attending circumstances are of such a positive and pointed character as to cast a shade on the transaction, and to put the holder on enquiry."

In Hays v. Lapeyre & McCaleb, 48 La. Ann. 749, 19 So. 821, 823, 35 L. R. A. 647, the court says:

"Direct and express notice is not always indispensable, to take notes out of the pale of commercial law and cut off the equities. When the circumstances are such as to bring a particular case under the operation of that rule, the maker of the note is legally entitled to insist upon its application regardless of the question of actual knowledge on the part of the purchaser of the note."

From Ruling Case Law, volume 3; subject, Bills and Notes, sec. 239:

"It has been said that good faith means payment of value for the instrument, but the payment of a valuable consideration is not alone sufficient to establish good faith. Nor does the additional fact of acquisition before maturity establish a case of bona fides. It should appear also that the facts and circumstances attending the transfer were not such as to charge the transferee with notice of a defect or infirmity in the paper," citing Vairin v. Hobson, 8 La. 50, 28 Am. Dec. 125.

It is obvious from the edges of the acceptances that they have been detached from some other paper by means of perforations.

The defendant cites in that connection the case of Rochford v. Alick McGee, 16 S. D. 606, 94 N. W. 695, 61 L. R. A. pages 335, 102 Am. St. Rep. 719.

In the case cited, it was established that a note had been cut out of a paper containing the contract of the party. In the present case, the perforations made may be due to the fact that these acceptances were detached from one another; but in connection with the testimony of Mr. Dutsch the perforated condition of the edges tends to support his contentions.

Mr. Coffman, plaintiff's president, etc., says he annexes to his testimony a copy of plaintiff's charter. It was not done; but he annexed a certificate of its incorporation, which stated that it is organized for manufacturing business purposes, and that its capital stock is $10,000.

Each of these acceptances contain on their face a printed statement, as follows;

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer."

The testimony shows that Coffman was well acquainted with the business of Blackstad, Inc., and it is a justifiable infer-

ence that he knew that the goods referred to on the face of the acceptances was jewelry, which had been sold to Dutsch on time, and was aware of the worthless character thereof. He saw on the face of the acceptances that they called for no interest, nor for the payment of attorney's fees in case of suit. He testified that Traders' Securities Company, Inc., paid $268.20 therefor, without recourse, giving Arch Manufacturing Company, Inc., a check for the amount. This check is contained in the record. It has cut on it the word "paid," and bears some purported bank indorsement which establishes nothing, and has on its back, placed there with a rubber stamp, an indorsement by "Arch Mfg. Co."; by whom placed there does not appear. The amount claimed to have been paid for these acceptances amounts to 90 per cent of the total sum called for by the acceptances on their face. A prudent conservative business concern, engaged in business for a profit, could not afford to pay such a cash price for paper, without recourse, in advance of the maturity of the paper. To make a profit, every acceptance would have to be paid, without suit, otherwise there would result loss without recourse. Plaintiff could not reasonably stay in business but a short time on its capital, paying such a price for such paper without recourse. Taking the entire record showing, it seems to me to be a reasonable conclusion that plaintiff's business is collecting for Blackstad, Inc., and that Blackstad, Inc., is endeavoring to accomplish through Traders' Securities Company, Inc., a collection that would not be attempted in its own name.

Our law has endeavored to protect our citizens from wrongs of this kind. Rev. St. 1870, sec. 2668; Act No. 119 of 1888; Act No. 64 of 1918 (sections 1 and 5, amended by Act No. 303 of 1926, sec. 2); Act No. 240 of 1918. The object of these enactments is to prevent fraud in matters like the present. It has been held by the Supreme Court in a number of cases, Halliday v. Bridewell, 36 La. Ann. 238; Kent v. Mojonier, 36 La. Ann. 259; Wolfe v. Joubert, 45 La. Ann. 1100, 13 So. 806, 21 L. R. A. 772; In re Pelican Ins. Co., 47 La. Ann. 935, 17 So. 427; Smith v. Williams, 152 La. 948, 94 So. 859; Toelke v. Toelke, 153 La. 697, 96 So. 536, that because a party does business in a firm name, when he is the only person interested in the business, is no reason why he cannot sue and compel the payment of a debt justly due him on account of said business; but in the cases cited, there was no effort to accomplish a fraud by collecting something not justly due.

In the present case, the record, to my mind, justifies the conclusion that the name Arch Manufacturing Company is used and put forward in this business with Dutsch by Blackstad, Inc., and Traders' Securities Company, Inc., for the purpose of compelling Dutsch to pay for jewelry that was worthless, and which the plaintiff does not pretend had any real value as such. In the case of Smith v. Williams, 152 La. 948, 94 So. 859, the court, construing Act No. 64 of 1918, had this to say:

"It is a general rule that, in the absence of statute to the contrary, a person may transact business and execute his contracts under any name he may choose to adopt, provided, of course, no fraud be committed."

In this case, under the showing made, the plaintiff cannot recover from Dutsch, except as the result of a fraud committed by compelling him to pay for jewelry that was worthless and of no value.

I therefore dissent.

―――

## ON REHEARING

See, also, 14 La. App. 591, 130 So. 361.

584

MOUTON, J. Section 9 of the general act relating to negotiable instruments, Act No. 64 of 1904, page 147, says that the instrument is payable to bearer:

"1. When it is expressed to be so payable. * * *

"3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable."

In this case it is contended that the person to whom the trade acceptance bill was made payable was a fictitious or non-existing person, and that this fact was not known to the acceptor. It is mainly on this contention that the application for the rehearing is grounded, and, though not expressed by this court, was the point upon which the rehearing was granted. A re-examination of the case has led us to the consideration of section 62 of that act, which reads as follows:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits,—

"1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

"2. The existence of the payee and his then capacity to indorse."

In commenting on that section of the general act relating to negotiable instruments, Brannon in his annotated cases says:

"The acceptor of a bill by accepting it, (1) engages that he will pay it according to the tenor of his acceptance, (2) is precluded from denying to a holder in due course, the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the bill."

We found, as was stated in our original opinion, that the plaintiff had acquired the trade acceptance in due course, and, under section 62 of the Negotiable Instrument Law, we hold that defendant could not deny the existence of the drawer, the genuineness of his signature, and his capacity to draw the bill.

This disposes of the real point involved in the rehearing and confirms us in the correctness of the original opinion rendered by this court, which is therefore reinstated and made our final opinion herein. The relief sought in the rehearing is denied.

ELLIOTT, J. (dissenting). I have not access to the authority cited in connection with Act No. 64 of 1904, sec. 62, which provides that:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits,—

"1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

"2. The existence of the payee and his then capacity to indorse."

But it seems to me that its meaning is substantially like that of the statute and has reference to some real actual drawer, drawee, and indorser who may become obligated on the instrument and obligate himself thereon to others and not to some fictitious or non-existent person not having the capacity contemplated by the law.

I will take occasion to further say that a bill of exchange must have a drawer, drawee, and indorser, who may become responsible to an acceptor as a secondary debtor. In this case the ostensible drawer, drawee, indorser is a trade-name, Blackstad, Inc., which a professed corporation is said to use for the purpose of its jewelry trade. A corporation, as heretofore stated, cannot, like an individual, trade in a fictitious name. It cannot bind itself, nor bind others, except when it trades in its own name. I still dissent for the reasons heretofore stated, and to which I now add the reasons presently stated.