523 So.2d 909 (1988)
MAS NURSING, INC., Plaintiff-Appellant,
v.
Darcey J. BURKE, et al., Defendants-Appellees.
No. 87-208.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Rehearing Denied May 5, 1988.
*910 Thompson & Harp, Robert Thompson III, Shreveport, for plaintiff-appellant.
Burke, Cestia, Landry & Lee, Ralph K. Lee, New Iberia, Hawley & Schexnayder, W. Paul Hawley, Juneau, Hill, Judice, Hill & Adley, P.C., Kathleen F. Drew, Lafayette, for defendants-appellees.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
Plaintiff, MAS Nursing, Inc. (MAS), appeals from a judgment sustaining exceptions of no right of action filed by defendants, Mrs. Darcey J. Burke, Porteus Burke, and First National Insurance Company (First National).
In late Septemberearly October 1983, defendant, Mrs. Burke, suffered a stroke. After a stay in the hospital, she returned home and began receiving twenty-four hour private nursing care. The services were apparently provided by plaintiff, MAS Nursing, Inc., doing business under the "trade name" of MIMS, Inc. Over a period of approximately five months, nursing services valued at $47,053.50 were allegedly provided to Mrs. Burke. Mrs. Burke was thought to be covered by a group insurance policy covering employees of Perry J. Burke, Inc., a business formerly operated by her late husband, now operated by her son. The policy was underwritten by defendant, First National. The group policy itself was issued to Consumer Benefits Association which is not a party to this suit.
A guarantee of payment for nursing services rendered by MIMS, Inc. is contained in the record. The document names Mrs. Burke as the guarantor but is signed by her son, Porteus Burke, who apparently had no power of attorney. The record also contains an assignment of insurance benefits and guarantee signed by Porteus Burke. This instrument, by its terms, assigns to MIMS, Inc. the benefits due Porteus Burke, the assignor, for private duty nursing care covered under the First National policy. The assignment covers nursing services rendered or to be rendered to Mrs. Burke by MIMS, Inc. First National *911 denied payment on the claims presented for MIMS, Inc.'s services citing as a reason, duplication of services. There was also a question of whether or not Mrs. Burke was covered under the policy since she was not a full-time employee of the company eligible for coverage.
MAS subsequently instituted this action against Mrs. Burke, Porteus Burke, and First National, seeking payment of $47,053.50 for services rendered, an equal amount from First National as a penalty, and reasonable attorney's fees as well as costs. Mrs. Burke and Porteus Burke filed a reconventional demand against MAS and third-party demands against First National and George Schwing Insurance Agency, Inc. (Schwing) who sold the group policy coverage to Perry J. Burke, Inc. First National filed a cross-claim against Schwing.
Exceptions of no right of action were raised by the Burkes and First National as to the original demands of MAS; by Schwing as to the third-party demands of the Burkes; and by First National as to the third-party demand of the Burkes. Trial on the exceptions was heard and the trial court sustained all of the above mentioned exceptions of no right of action. The trial judge held that the alleged assignee, MIMS, Inc., was not a valid Louisiana corporation or legal entity authorized and empowered to do business in Louisiana and therefore, could not be the assignee of the claims. He also found that MAS failed to show that it was the proper assignee. The trial court also denied an exception of no cause of action filed by Schwing. The suit by MAS against all parties was dismissed, and all third-party demands fell with it. What remained was the claim by First National against Schwing for litigation-related costs.
On appeal MAS claims that the trial court erred in ruling that a corporation may not contract or do business in a name other than its registered corporate name and in sustaining the various exceptions of no right of action. Defendant Schwing did not appeal the trial court's denial of its exception of no cause of action.
It is admitted by plaintiff, MAS, that MIMS, Inc. is not a valid Louisiana corporation. MAS Nursing, Inc. itself is unquestionably a valid Louisiana corporation. We are presented with two threshold issues: (1) whether or not a Louisiana corporation may contract and do business under a name other than its registered corporate name; and, (2) if so, whether or not MAS established that it, using the trade name MIMS, Inc., rendered the nursing services in question to Mrs. Burke.
Absent cases involving fraud or deceit, we can find no statute or jurisprudential rule which operates to prohibit a corporation from contracting or doing business under a name other than its registered corporate name. To the contrary, the jurisprudence seems to hold that a corporation may do so. In Hy-Grade Investment Corp. v. Robillard, 196 So.2d 558 (La.App. 4th Cir.1967), a corporation with the registered name of Hy-Grade Investment Inc. filed suit under the name of Hy-Grade Investment Corp. seeking to collect on a promissory note. Defendant, Robillard, filed an exception of no right of action claiming that Hy-Grade Investment Corp. did not exist. In addressing the issue of whether or not a corporation may contract in a name other than its corporate name the court stated:
"The first question must be answered in the affirmative. In National Oil Works Inc. v. Korn Bros., 164 La. 800, 114 So. 659, the Supreme Court held that a corporation may validly contract in an assumed name in the absence of a statute prohibiting it from doing so, and said:
"We know of no law in this state prohibiting a corporation from transacting business or contracting under an assumed or trade name. However, Act 64 of 1918 makes it a misdemeanor for any person or persons to transact business in this state, under an assumed name, without first complying with certain requirements, but as appears from section 4 thereof, the act has no application to corporations duly organized under the laws of this state, or to any corporation organized under *912 the laws of any other state, and lawfully doing business in this state." (To the same effect see Traders' Securities Co. v. Dutsch, 19 La.App. 576, 137 So. 75 and cases there cited; see also 18 Am.Jur.2d p. 679, § 143.)
Act 64 of 1918 referred to in National Oil Works Inc. v. Korn Bros. supra is now LSA-R.S. 51:281 et seq. and Section 4 of that act is now LSA-R.S. 51:283 which states in terms that the legislation has no application to corporations, foreign or domestic."
In Traders' Securities Co. v. Dutsch, 19 La.App. 576, 137 So. 75 (1st Cir.1931), cited by the court in Hy-Grade Investment Corp. v. Robillard, supra, the court examined a similar issue. Several negotiable instruments, made payable to the Arch Manufacturing Company, were endorsed to the order of Traders' Securities Company. The endorsement read "Arch Manufacturing Company, per W.A. Blackstad." When Traders' Securities Company attempted to collect on the instruments, the maker, Dutsch, attempted to set forth as a defense that the Arch Manufacturing Company had no existence and could not have appeared in a Louisiana court to enforce its right to collect on the instruments. Arch Manufacturing Company was simply a trade name used by a valid Missouri corporation Blackstad Corporation. Before addressing the issues involving negotiable instrument law, the court stated:
"In the case of Smith v. Williams, 152 La. 948, 94 So. 859, M.M. Smith sued under a trade-name. The court, in reviewing sections 2668 and 2669, Revised Statutes, also Act No. 64 of 1918, on this subject, said: "A person may transact business and execute his contracts under any name he may choose to adopt, provided, of course, no fraud be committed."
The exception was overruled the court saying: "Whether there was any fraud committed by plaintiff in entering into a contract under an assumed name is a matter of defense and does not arise on exception of no cause of action."

It is therefore obvious that business done under an assumed or trade-name is not for that reason stricken with nullity, so as to preclude any recovery in such a case. To the same effect, see Kent v. Mojonier, 36 La.Ann. 259; Wolfe v. Joubert, 45 La.Ann. 1104, 13 So. 806, 21 L.R.A. 772; In re Pelican Ins. Co., 47 La.Ann. 935, 17 So. 427." (Emphasis added)
Louisiana does have a penal statute which prohibits a "person" from transacting business under an assumed name, designation or style, corporate or otherwise, other than the real name of the individual conducting the business, unless he registers the name in the parish or parishes where he intends to conduct businessLa. R.S. 51:281. However, La.R.S. 51:284 states that La.R.S. 51:281 does not apply to any corporation duly organized under the laws of Louisiana.
The object of La.R.S. 51:281 is to protect the public from fraud, deceit, and false representations by the use of names similar to other trade names, which infringe upon the goodwill of an established business and tend to confuse the public. House of Lights, Inc. v. Diecidue, 222 So. 2d 603 (La.App. 4th Cir.1969). Even though a person who violates La.R.S. 51:281 may be fined and/or imprisoned, a party contracting with him may not use the fact of the violation of the statute as a defense to avoid payment for services rendered or goods sold. Brenard Mfg. Co. v. Gibbs, 119 So. 483 (La.App. 2nd Cir.1928).
In view of the above discussed jurisprudence we find that MAS Nursing, Inc. could have legally contracted to provide nursing care services to Mrs. Burke under the assumed or trade name of MIMS, Inc. It had a right to sue to recover payment for those services under its registered corporate name MAS Nursing, Inc. provided it could establish that it in fact operated under the trade name of MIMS, Inc. Although some of the jurisprudence we have cited seems to indicate that suit could be filed under the assumed name, La.C.C.P. art. 687 provides that "a person who does business under a trade name shall sue in his own name to enforce a right created by or arising out of the doing of such business." *913 See Campbell v. Parker, 209 So.2d 337 (La.App. 3rd Cir.1968). A corporation is a fictional person and the principle set forth in La.C.C.P. art. 687 is equally applicable where a corporation does business under a trade name. See Martinez v. Posner, Martinez and Padgett, 385 So.2d 525 (La.App. 3rd Cir.1980), writ denied 393 So. 2d 727 (La.1980).
La.C.C.P. art. 681 provides that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." Official Revision Comment (b) to that article states that it also serves as the basis of the peremptory exception of no right of action. The peremptory exception of no right of action raises the question of whether the plaintiff has any interest in judicially enforcing the right asserted. Teachers' Retirement System v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984); Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254 (La.1979). Where doubt exists regarding whether or not to sustain an exception of no right of action, it is to be resolved in favor of the plaintiffs. Teachers' Retirement System v. Louisiana State Employees Retirement System, supra; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). See also Louisiana Law of Exceptions, 22 Loy.L.Rev. 90 (1975-76).
Admittedly, MAS presented little evidence to meet defendants' exceptions of no right of action. A deposition taken of the director of nursing for MAS, Barbara A. Cunningham, revealed little of the relationship between MAS and MIMS, Inc. Simply put, Ms. Cunningham did not know what the relationship was. However, records produced by her, viewed together with others contained in the record, show that MAS paid the wages of the nurses who provided care to Mrs. Burke under the trade name of MIMS, Inc.
MAS payroll check stubs list the names of the nurses, the dates and number of hours worked, and the patient to whom services were rendered"Burke." Most of these check stubs contain the notation "Paid on behalf of MIMS, Inc." and the information on them pertaining to names, dates, and hours worked matches information contained on MIMS, Inc. invoices submitted to First National.
MIMS, Inc. had a separate address from MAS and, until the suit was filed, the existence of MAS was apparently unknown to any of the defendants. At the hearing on the exceptions, Risley Longmire, the president and chief executive officer of "MAS Managment" testified. MAS Nursing, Inc. is a wholly owned subsidiary of MAS Management. Mr. Longmire is also the president of MAS Nursing, Inc. He characterized MIMS, Inc. as "an accounting cost and profit center" for MAS Nursing, Inc. According to him, MIMS, Inc. "was a title given to a cost center." He stated that the nurses who provided care for Mrs. Burke were employed and paid by MAS Nursing, Inc. which paid all expenses in connection with the Burke case and paid the payroll taxes for the nurses.
This was essentially the only evidence presented concerning the relationship between MAS Nursing, Inc. and MIMS, Inc. We feel the evidence establishes that MAS Nursing, Inc. has a real and actual interest in asserting the right to recover the amounts owed for the nursing services provided to Mrs. Burke. The evidence shows that in fact MAS Nursing, Inc. provided these services doing business under the trade name of MIMS, Inc. To the extent that there is any doubt in this regard we resolve it in favor of the plaintiff and trial on the merits.
For the reasons assigned we reverse the judgment of the trial court insofar as it (1) sustained the exception of no right of action filed by Darcey J. Burke and Porteus Burke and dismissed the claims of MAS Nursing, Inc. against them; (2) sustained the exceptions of no right of action filed by First National Insurance Company and dismissed the claims of MAS Nursing, Inc., Porteus Burke and Mrs. Burke against it; (3) sustained the exceptions of no right of action filed by The George Schwing Insurance Agency and dismissed the claims of Darcey J. Burke and Porteus Burke *914 against it; and (4) assessed the costs of court against MAS Nursing, Inc.
This case is remanded to the trial court for further proceedings.
Costs of court at both the trial and appellate level are assessed equally against the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.