BARNETTE, Judge.
This is a suit on an open account for the alleged balance due House of Lights, Inc., for the sale and delivery to Joseph C. Diecidue, doing business as Sam Dash Lumber Company, of certain home furnishings. Defendant filed an answer and reconventional demand alleging set-off and compensation. Judgment was rendered in the lower court in favor of House of Lights, Inc., for the full sum of its claim and against the defendant on his reconventional demand. The defendant has appealed.
The essence of plaintiff’s suit is that from November, 1962, through May, 1965, defendant purchased materials from plaintiff with a balance remaining in May, 1965, of $1,386.71. Plaintiff admits purchases from defendant totalling $693.09 for which set-off should be allowed, leaving a balance due from defendant of $693.92.
Defendant, in his reconventional demand, contends that the merchandise was sold by House of Lights to two separate partnerships of which he was a member. One of these was an alleged partnership consisting of himself and one Samuel Ruskin doing business as “Sam Dash & Son, Planning and Building Division,” engaged in the construction and/or repair of residences. The other partnership is that which is alleged to exist between defendant and his father, Salvador A. Diecidue, doing business as “Sam Dash and Son Lumber Yard,” engaged in the business of selling lumber and building materials. Both partnerships were conducted from the same office at 1301 Kentucky Street. Defendant testified that the partnership between himself and Samuel Ruskin was dissolved as of December 31, 1962.
John R. Komidor, general sales manager and vice president of plaintiff, testified that from November 28, 1962, through December 29, 1962, House of Lights sold to Diecidue merchandise totalling $1,173.05. He further testified that from January, 1962, through May, 1965, plaintiff sold defendant merchandise totalling $950.19. His testimony was that House of Lights made purchases from Diecidue for $693.09', and this figure added to payments received on account left a balance due by defendant of $693.62.
Defendant admitted in the course of trial that during the latter part of 1962 merchandise was sold to him totalling $1,173.05, but stressed that the goods were for the sole use of the partnership existing between himself and Samuel Ruskin. He also admitted that merchandise was sold to him either individually or to the partnership existing between himself and his father from January, 1963, to May, 1965, totalling $950.19, and that he is liable for that sum. However, defendant argues that the partnership between himself and Ruskin was an ordinary partnership under the laws of this State and therefore he is liable only for his virile share of the debts of that firm, or more particularly, one-half of the $1,173.05 he *605 admits was purchased by the partnership prior to the date of the alleged dissolution. Defendant also claims as set-off a credit of $844.05 allegedly received by House of Lights as part payment of the account. Plaintiff, on the other hand, claims that only $798.10 was received on this account and thus the difference of these figures is in dispute.
Defendant further claims that he sold and delivered to plaintiff merchandise to-talling $902.32 on open account which is still outstanding. It is his contention that the partnership between himself and his father is a commercial partnership and since under Louisiana law, particularly LSA-C.C. art. 2872, he is liable in solido for the debts of the partnership, then conversely, he should be allowed to use the full amount of debts owed the partnership by plaintiff as compensation or set-off for the personal debts owed by him to House of Lights. Applying this rationale, defendant alleges that plaintiff is indebted to him in the sum of $209.65 for which amount he seeks judgment in reconvention.
The only two witnesses who testified at the trial below were Komidor for plaintiff and the defendant, Joseph C. Diecidue. They are in substantial agreement on the amount of goods purchased from House of Lights by Diecidue, either personally or on behalf of one or both of his alleged partnerships, and the goods purchased by House of Lights from Sam Dash & Son Lumber Company.
The disputed items are:
1. The amount of set-off due for purchases by plaintiff from defendant. The plaintiff has allowed a credit by set-off in the amount of $693.09; the defendant is claiming $902.32, a difference of $209. 23.
2. The amount of credit payments made by defendant on the balance due plaintiff. The defendant claims $844.05, the plaintiff has credited $798.10. The amount in dispute on this item therefore is $45.95.
The only other issue is whether the defendant is liable for the full amount due plaintiff for goods sold prior to December 31, 1962, amounting to $1,173.05 or only for one-half thereof as his virile share of the debt of his alleged ordinary partnership with Ruskin which was dissolved on December 31, 1962.
We will first, as best we can from the inadequate transcript of evidence before us, attempt to determine the amounts of the respective accounts due. We will then address ourselves to the more serious second question.
The plaintiff’s proof consists of the testimony of Mr. Komidor supported by a purported ledger sheet, which he identified, and certain (but not all) of the invoices to which the ledger sheet makes reference. The defendant, Diecidue, relies entirely upon his own testimony and certain invoices dated from July 2, 1965, to September 9, 1965, covering sales of goods by Sam Dash & Son. The total, as shown by these invoices, is $902.32. Included in this total is an item of $12.15 which Mr. Komidor denied. All other items are acknowledged by him.
The plaintiff has acknowledged in its petition an indebtedness to defendant, but alleged the amount to be only $693.09. It has produced no invoices nor other evidence to support this figure and relies entirely on the testimony of Mr. Komidor. On the other hand, the defendant has offered in evidence invoices supported by Diecidue’s testimony. Clearly the evidence preponderates in favor of defendant on this issue, except for the item of $12.15, the purported invoice for which does appear somewhat irregular and is denied by Komidor. Accordingly we will accept $890.17 as the correct amount to be credited for goods bought by plaintiff from defendant.
.The plaintiff’s ledger sheet, supported by the testimony of Mr. Komidor, shows credits by payments in the amount *606 of $500 (which defendant admits is correct) and certain credit entries of $298.10, making the total credit $798.10. The defendant contends that the credit should he $844.05, but has offered no evidence from which we can determine the basis for this contention. We therefore conclude that the preponderance of evidence supports the plaintiff’s figure on this disputed item.
Having concluded that the respective amounts of the offsetting accounts are $1,386.71 due plaintiff and $890.17 due defendant, we must determine if defendant is personally liable for the full amount which includes the disputed $1,173.05 or if he is liable only for a partner's share of this amount, or $586.53. If defendant is personally liable for the full amount, plaintiff should have judgment for $496.54, the difference between the two accounts; otherwise, defendant would be entitled to judgment in reconvention of $89.99.
The defendant has pleaded an affirmative defense to the extent of $586.53, and of course, as plaintiff in reconvention, carries the burden of affirmative proof of his allegations in reconvention. Once the plaintiff has proven the account, which except for a few disputed items is admitted, the burden of proof shifts to the defendant to establish his affirmative defense and his claim in reconvention.
The only evidence of the existence of the two alleged partnerships is defendant's testimony and certain certificates in the form of affidavits filed in the Conveyance Office of the Parish of Orleans in compliance with LSA-R.S. 51:281, dated June 5 and June 7, 1962. Another affidavit by defendant dated and filed January 13, 1964, purports to be a declaration of dissolution of partnership with Sam Ruskin, effective December 31, 1962.
There is no evidence whatever that defendant ever informed plaintiff’s officers or agents of the existence of the alleged partnerships. Plaintiff’s representative, Komidor, testified that he had done business with Joseph C. Diecidue, known as “Joe Dash,” for several years on a personal basis. He met Ruskin through “Joe Dash” in 1960 or 1961, and after that “ * * * had some dealings with Sam Ruskin through Sam Dash & Son purchasing merchandise from the House of Lights.” In reply to a question if Sam Ruskin had ever represented himself as a partner of Dieci-due, he said: “[I] never [had] any indication that he was a partner with Diecidue.”
There was no contradictory testimony from Diecidue. His failure to call his father, Salvador (known'as Sam Dash), his alleged partner in the lumber business, and Ruskin to testify as to the alleged partnerships is unexplained. He did say that he did not know the present whereabouts of Sam Ruskin but heard reports of his frequenting the race track. There is no evidence of attempts to subpoena him as a witness.
The defendant relies upon the authority of Harding v. Wattigney, 62 So.2d 190 (La. App.Orl.1952); Williams Lumber Co. v. Stewart Gast & Bro., 21 So.2d 773 (La. App.Orl.1945); and R. P. Farnsworth & Co. v. Estrade, Cotton & Fricke, 166 So. 160 (La.App.Orl.1936), that a partnership engaged in building and construction is an ordinary partnership. He cites LSA-C.C. arts. 2872 and 2873 to the effect that ordinary partners are not bound in solido but each for his share according to the number of partners, and hence, he is liable personally for only one-half the amount due for purchases made by the ordinary partnership, Sam Dash & Son Planning and Building Division.
The authorities cited by defendant are entirely correct and in a proper factual situation would support defendant’s contention, but defendant has failed to carry his burden of proof to the point of establishing a factual situation to support his legal theory.
Most of the invoices filed in evidence by plaintiff indicate sales to Sam Dash & Son Planning and Building Division, but, as pointed out above, there was no evidence *607 presented to indicate that plaintiff had any reason to know that it was dealing with a partnership. It had done business for a number of years with Joseph C. Diecidue in the trade name of Sam Dash & Son. Mr. Komidor testified that his billings were made as the customer requested and that whether the goods sold were to be resold or used in construction would determine if the customer should pay a sales tax. It was of no concern to plaintiff if defendant used the merchandise in his construction business or for resale, but it was important to the defendant for tax purposes. We are convinced that plaintiff did business only with the defendant Joseph C. Diecidue in the trade names, as Diecidue requested.
The defendant places strong reliance on the affidavits filed in the Conveyance Office. He takes the position that they are public notice of his two partnerships and the respective nature of each. We do not agree. The affidavits merely give the names of the parties, their respective addresses, and the trade names under which they will do business. The nature and scope of the business of each “firm” is not stated, nor do they expressly declare that they are partnerships. They declare no relationship between the two “firms” and that they are filed to comply with LSA-R.S. 51:281. Diecidue’s ex parte affidavit filed January 13, 1964, giving notice of the dissolution of his alleged “partnership” with Ruskin as of December 31, 1962, is at most only a self-serving declaration to bolster his legal theory of limited liability.
The purpose of LSA-R.S. 51:281 is to prevent the conduct of a business or trade in a name other than one’s own which may be misleading to the public. Its object is to protect the public from deceit and false representation by the use of names similar to other trade names which infringe upon the goodwill of an established business and tend to confuse the public. It was not enacted or designed to serve as a public notice of partnership. Had it been so intended it would have required the affiants to state the nature and objects of the business, whether ordinary or commercial, and other pertinent information to properly inform the public. It is a penal statute, the source authority of which is Act 64 of 1918, which provides in section 5 (LSA-R.S. 51:284) the penalty for violation. The purpose and intent of the act is clearly indicated by its title which is:
“To regulate the carrying on of business under an assumed or fictitious name and to provide penalties for the violation thereof.”
In interpreting the statute the Supreme Court in New Orleans Checker Cabs v. Mumphrey, 205 La. 1083, 18 So.2d 629, at p. 632 (1944), through O’Niell, Chief Justice, said: “The purpose of the act, obviously, is to prevent' the obtaining of credit under an assumed name.”
In Toelke v. Toelke, 153 La. 697, 96 So. 536 (1923), there was an issue over certain funds deposited in a bank and a question of the binding effect on third persons of the existence of a partnership agreement. In that case there was no affidavit filed under Act 64 of 1918. It is apparent from a reading of that opinion that if one had been filed, it would have been considered by the court as additional evidence of the existence of a partnership, but the controlling factual conclusion was not dependent on such filing. The Court found the controlling fact to be:
“The evidence in the case shows that Toelke and Eitmann, long prior to the seizure, had entered into a verbal partnership agreement, under which they were to conduct a general building and contracting business, consisting mostly of making repairs, and that they agreed, as part of the partnership arrangement, that the business should be conducted and the partnership funds deposited in the name of John M. Toelke, and that the profits derived from the business should be equally divided between them.
“The existence of such partnership, the arrangement for the conducting of its *608 business under the firm name of John M. Toelke, the fact that Toelke and Eitmann were known as equal partners and dealt with as such by merchants selling goods to them, and the fact that the bank knew of the existence of such partnership and that its funds were deposited in the firm name of John M. Toelke, are matters clearly established by the evidence in the case.” 96 So. at 537-538.
It is our opinion that the filing of the affidavit in compliance with LSA-R.S. 51:281 might be considered by the court as evidence of notice to third parties of the existence of a partnership along with other pertinent evidence, such as was presented in Toelke. Conceding, however, that it might have some evidentiary value it is not alone sufficient to convey to the public the information necessary to have a binding effect upon third persons. The defendant has offered no other evidence of his partnership with Ruskin and no testimony to contradict Komidor’s testimony that he never had knowledge of any such partnership.
Furthermore, the declaration in the affidavits that there is no relationship between the two alleged separate firms is not borne out by the evidence. They are so interrelated that the trading public would never know in dealing with Joseph C. Diecidue which hat he was wearing at any given time. He could, as convenience indicated, do business in either name. He cannot use such device to confuse identity and thus avoid personal liability for debts contracted in either trade name, especially if the other party has no knowledge of the alleged separate capacities in which he might choose to trade. We think the rationale adopted by us in the recent case, A-A-A Foundations, Inc. v. Elite Homes, Inc., 217 So.2d 666 (La.App.1969), is equally applicable here. In that case we said at p. 672:
“We find that in this situation where the affairs of three corporations are so interwoven, and the president of one purports to act as agent for another in soliciting a contract with a third party, it is incumbent on these corporations to make clear which one of the three is to be regarded as the contracting party. Any misapprehension as to identity created in the mind of this third party by their failure to do so, cannot be used as a defense to suit against any one of them by this third party.”
For the foregoing reasons the judgment appealed from is amended so as to reduce the amount of judgment in favor of plaintiff, House of Lights, Inc., against Joseph C. Diecidue, doing business as Sam Dash Lumber Company, from $693.62 to $496.54 and as thus amended and in all other respects it is affirmed at appellant’s cost.
Amended and affirmed.