JjSTEWART, J.
The defendants, Robert Creamer and Creamer Brothers, Inc., appeal from a judgment awarding the plaintiff, Louisiana Lift and Equipment, Inc., either the return or the value of a forklift bought by the defendants from plaintiffs lessee. For the following reasons, we reverse and remand.
FACTS
In April 1994, Mr. Robert C. Eizel, d/b/a R.C.E. Equipment Company (R.C.E.), approached Louisiana Lift and Equipment Co. (Louisiana Lift) to negotiate the acquisition of a new forklift for Mr. Eizel’s business. A credit check on Mr. Eizel was not favorable, so Louisiana Lift elected to enter into a “Rental Purchase Transaction Agreement” with Mr. Eizel. On April 25, 1994, Eizel signed the agreement as lessee for a “New Daewoo” forklift. The agreement listed the lessor as “Louisiana Clark-lift, Inc.” The price of the forklift was $16,400.00. The lease agreement had a term of 36 months at $537.56 per month and further specified:
(12) Twelve Month Guarantee $455 applies to (sic) principle each month
Georgia Owens, accounts receivable coordinator for Louisiana Lift, testified that R.C.E. paid 11 of the 36 lease payments before going into default.
The contract also contained a provision forbidding the lessee from selling the forklift. Nevertheless, on October 9, 1995, R.C.E. sold the forklift. Exhibits in the record include an automobile bill of sale which states that the buyer of the forklift is Creamer Furniture (sic) represented by Robert Creamer. According to Robert Creamer, Creamer Furniture is a trade name of a Louisiana corporation, “Creamer Brother’s, Inc.,” (Creamer Brothers). Creamer testified that he is the owner of Creamer Brothers. This bill of sale gives the price as $9,000.00. Another exhibit is an invoice, signed by Robert Creamer with no indication of his | ^representative capacity. This invoice gives the forklift price as $9,500.00, The invoice specifies that the forklift was sold to Creamer Furniture.
Robert Creamer testified that he negotiated with Robert Eizel to purchase the forklift when Mr. Eizel was in the process of going out of business. Mr. Creamer bought all of Mr. Eizel’s office furniture and a load of pallet racks before Eizel agreed to sell the forklift. Creamer said that he thought that $9,000 was a good price for the forklift and that he thought he could make a $1,000 profit by reselling the machine. Creamer testified that he contacted an equipment dealer, James Pharr, before buying the forklift and asked Mr. Pharr to ensure that no liens were outstanding on the machine. Creamer testified that he never had any indication that the machine was leased to Eizel.
On October 26, 1995, Louisiana Lifts, Inc. filed suit in Shreveport City Court against Mr. Eizel. The lawsuit alleged that the defendant was then $2,495.38 behind in rental payments and now owed the balance due under the lease, $14,514.00. On April 22, 1996, plaintiff amended its petition to add Mr. Charles Eizel as a defendant. Although Robert Eizel signed the rental purchase agreement, Charles *862 Eizel signed the credit application as “owner” of R.C.E. Equipment. On May 14, 1996, the city court judge signed a judgment in favor of Louisiana Lift against Charles Eizel awarding the plaintiff $14,514.00 plus further accruals, legal interest, costs and attorney fees and reserving the plaintiffs right to proceed against Robert Eizel.
On June 24, 1996, Louisiana Lift filed a rule to show cause in city court stating that Robert Eizel had appeared in the office of the plaintiffs lawyer and admitted that he sold the forklift to “Mr. Creamer of Creamer Furniture.” The rule sought an order directing Mr. Creamer to deliver the forklift to Louisiana Lift. Mr. Creamer responded with exceptions which, inter alia, challenged the Shreveport 13city court’s jurisdiction over the person or entity at the Blanchard, Louisiana address on the citation. The city court record reflects no ruling on this exception.
On November 8, 1996, “Louisiana Industries, Inc.” filed suit against Robert Eizel and Robert Creamer d/b/a Creamer Furniture in the district court of Caddo Parish. The suit, captioned “Revocatory Action and Oblique Action,” alleged that Creamer had leased the forklift to one Larry Green in Mississippi, that Creamer knew or should have known that “the property was not property owned by defendant Eizel at the time of the alleged sale,” and that Creamer had refused to obtain the forklift from Green. Subsequently, Creamer recovered the forklift from Green and stored it at Creamer Furniture.
Robert Creamer, individually, then filed an exception of no right of action alleging that the plaintiff had no right to pursue him, personally, because Creamer Furniture was d/b/a of Creamer Brothers, Inc. Plaintiff subsequently amended its petition to change its name as plaintiff from Louisiana Lifts, Inc. to its true name, Louisiana Lift and Equipment, Inc. Plaintiff later amended its petition a second time to add “Creamer Brother’s, Inc. d/b/a Creamer Furniture” as a defendant. In his individual answer, Mr. Creamer further excepted to the petition on the grounds that in the 1994 transaction, the seller of the forklift was given as Louisiana Clarklift, Inc., whereas the plaintiff in this case was Louisiana Lift.
Trial of the matter was held on January 12, 1999. Robert Eizel did not testify or appear at the trial; plaintiff was unable to obtain service upon him. The trial court’s reasons for judgment indicate that Mr. Eizel cannot be located and has numerous suits and liens pending against him. No evidence of such suits or liens was introduced at trial, although in its brief, appel-lee refers to several specific | ¿judgments in the mortgage records of Caddo Parish on the date of the sale from Eizel to Creamer.
At the close of the plaintiffs evidence, defendants moved for an involuntary dismissal on the grounds that the plaintiff had no right of action because the original seller of the forklift had been “Louisiana Clarklift, Inc.” The trial court denied this motion. On July 30,1999, the court signed a judgment:
— ordering Robert Creamer and Creamer Brothers, Inc. to submit the forklift for inspection and appraisal by plaintiffs representatives; and
— casting Robert Creamer and Creamer Brothers, Inc. in judgment in solido for the fair market value of the forklift as determined by the appraisal plus legal interest from judicial demand or, at the option of plaintiff, the return of the forklift after inspection.
Robert Creamer filed a motion for a new trial limited to re-argument on the question of his personal liability. The trial court denied this motion for the stated reason that “Mr. Creamer is the head of Creamer Brothers, Inc.”
Robert Creamer and Creamer Brothers now appeal from the judgment.
DISCUSSION
Appellants contend that the trial court erred as a matter of law in rendering *863 judgment against Robert Creamer individually.
La. C.C. art. 24 provides:
There are two kinds of persons: natural persons and juridical persons.
A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.
La. R.S. 12:93 B. provides:
B. A shareholder of a corporation organized after January 1, 1929, shall not be liable personally for any debt or liability of the corporation.
| RThe limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1168 (La.1991). Regardless of the basis for piercing the corporate veil, the situation is to be viewed with regard to the totality of the circumstances in each case. Whether imposition of individual liability is justified under particular circumstances is primarily a factual finding to be made by the trial court and reviewed under the standard of manifest error. Kemper v. Don Coleman, Jr., Builder, Inc., 31,576 (La.App.2d Cir.7/29/99), 746 So.2d 11, 18-19, writs denied, 99-2954, 99-2955 (La.1/7/00), 752 So.2d 861.
We hold that the circumstances of this case do not rise to the “exceptional” standard required to hold Mr. Creamer personally liable. The bill of sale for the forklift between R.C.E. Equipment and Mr. Creamer clearly shows that the buyer of the forklift is “Creamer Furniture (sic) represent by Robert Creamer.” Although the invoice / receipt for the transaction was signed by Mr. Creamer with no indication of his representative capacity, the block on the invoice specifying “Sold To:” clearly reads “Creamer Furniture.” The defendants produced at trial a certificate from the Secretary of State showing that “Creamer Brother’s, Inc.” was incorporated on April 30, 1975 and that no certifícate of dissolution has been issued. Mr. Creamer testified that the corporation did business as, inter alia, Creamer Furniture.
A contract entered into by a corporation, bearing only its assumed or trade name, is not for that reason deemed null and unenforceable. Absent fraud or deceit, a corporation may contract under a name other than its corporate name. Cummings v. Injury Hotline, 26,372 (La.App.2d Cir.12/7/94), 648 So.2d 3, 4. On the meager showing made, there is no justification to “pierce the veil” of the corporation. The trial court erred in holding Mr. Creamer personally liable.
jfiB.y their second assignment of e^ror, the appellants argue that the trial court erred as a matter of law in not granting their defendants’ motion for involuntary dismissal. The defendants’ motion for involuntary dismissal was made pursuant to La. C.C.P. art. 1672 B. which provides, in part:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief.
A corporation is a juridical person. La. C.C. art. 24. La. C.C.P. art. 687 provides:
A person who does business under a trade name shall sue in his own name to enforce a right created by or arising out of the doing of such business.
In the city court record introduced into evidence, plaintiff identified itself in its rule to show cause as “Louisiana Lifts, Inc. F/D/B/A Louisiana Clarklift, Inc.” As noted, plaintiff corrected its name in the district court lawsuit from “Louisiana Lifts, Inc.” to “Louisiana Lift and Equipment, Inc.” Even though at the time of the original sale the company was doing business *864 as Louisiana Clarklift, Inc., there is little question that Louisiana Lift and Equipment, Inc. was the owner and original retailer of the forklift and the party with a real and actual interest in the lawsuit. Plaintiffs failure at trial to produce an invoice showing that it bought the forklift from the manufacturer or a distributor is not fatal to the plaintiffs action. Again, in the absence of fraud or deceit, a corporation may contract under a name other than its corporate name. Compare MAS Nursing, Inc. v. Burke, 523 So.2d 909 (La.App. 3d Cir.1988), writ denied, 530 So.2d 570 (La.1988).
This assignment of error is without merit.
By their third assignment of error, the appellants argue that the trial court erred as a matter of law in failing to find that Robert Creamer was in good faith when he purchased the subject forklift. Louisiana Lift’s action against Creamer [7was styled as a revocatory and an oblique action. In the oblique action, the creditor exercises a right belonging to the debtor in the debtor’s name. This action is governed by La. C.C. art. 2044, which provides:
If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor.
For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.
Louisiana Lift has not specified what, if any, of R.C.E.’s rights it means to enforce, and the trial court did not rely upon this article for its judgment. Rather, Louisiana Lift is asserting a revocatory action, acting in its own name to enforce its own rights. The revocatory action is governed by La. C.C. art.2036, which provides:
An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor’s insolvency.
Under the terms of the 1994 lease-purchase agreement as interpreted by Mr. Crosby in his testimony, Louisiana Lift had a guaranteed 12-month lease with Robert Eizel. Eizel’s 1995 sale of the forklift to Creamer was clearly made after the obligee’s right to the rent arose. The remaining question under this article is whether Eizel’s act caused or increased Eizel’s insolvency.
La. C.C. art. 2037 provides:
An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets.
Plaintiff introduced no proof that Robert Eizel was, or is, insolvent. Specifically, there was no proof of the extent of Mr. Eizel’s assets or debts. Plaintiff proved that Mr. Eizel did not complete his obligation to pay the lease for 12 months, but no evidence suggests that Mr. Eizel’s sale of the forklift made him insolvent.
Is As noted, in the reasons for judgment the trial court referred to numerous suits and liens against Robert Eizel recorded in the public records. Although no evidence of those lawsuits was introduced at trial, the trial court may take judicial notice of the records of its own Clerk’s office. La. C.E. art. 201 provides in part:
A. Scope of Article. This Article governs only judicial notice of adjudicative facts. An “adjudicative fact” is a fact normally determined by the trier of fact.
B. Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
(1) Generally known within the territorial jurisdiction of the trial court; or
(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. When discretionary. A court may take judicial notice, whether requested or not.
*865 However, we decline to assume that the recitation in plaintiff’s brief is correct concerning the nature and extent of the judgments against Robert Eizel because the trial court did not adopt that recitation as a fact. Statements in appellate briefs are not evidence. State in Interest of R.C. v. Clarke, 33,023 (La.App.2d Cir.10/27/99), 743 So.2d 843, 848. In the absence of proof of the extent of Eizel’s indebtedness, there was no basis for the trial court to find that the sale of the forklift caused or increased Eizel’s alleged insolvency. There was thus no authority under these articles for the trial court to nullify Eizel’s sale of the forklift to Creamer.
Even if this court assumed ar-guendo that the transaction increased Eiz-el’s insolvency, there is no evidence to support the trial court’s finding that Creamer knew that the sale would increase Eizel’s insolvency.
La. C.C. art. 2038 provides:
An obligee may annul an onerous contract made by the obligor with a person who knew or should have known that the contract would cause or increase the obligor’s insolvency. In that case, the person is |9entitled to recover what he gave in return only to the extent that it has inured to the benefit of the obligor’s creditors.
An obligee may annul an onerous contract made by the obligor with a person who did not know that the contract would cause or increase the obligor’s insolvency, but in that case that person is entitled to recover as much as he gave to the obligor. That lack of knowledge is presumed when that person has given at least four-fifths of the value of the thing obtained in return from the obli-gor.
La. C.C. art. 2040 provides:
An obligee may not annul a contract made by the obligor in the regular course of his business.
We will assume arguendo that the sale of the forklift was not in the regular course of Mr. Eizel’s business. As will be discussed further below, there is no evidence that Mr. Creamer knew or should have known that the forklift did not belong to Mr. Eizel. Given that, Mr. Creamer did not know that the sale of the forklift was contrary to the terms of Mr. Eizel’s lease and would cause Mr. Eizel to owe Louisiana Lift the remainder due under the contract. Thus, there is no prima facie showing that Mr. Creamer knew that the sale would cause or increase Mr. Eizel’s insolvency.
Applying the test defining the statutory presumption of good faith, we find no basis in the record for the trial court’s statement in its reasons for judgment that “the forklift was valued at $14,514.00 as indicated on the lease/purchase contract.” The contract price was $16,400.00; the $14,514.00 figure was the amount of the city court judgment against Charles Eizel. Concerning the value of new forklifts, Mr. Creamer testified that “you can buy them as low as $12,000.00 and up.” At the time of the sale, the New Daewoo forklift was nearly a year old, and Mr. Creamer testified that he bought the machine with the intent of making $1,000 on the deal. With no evidence of the value of the used forklift at the time of the sale, the trial court erred in finding that Mr. Creamer was not in good faith in buying the machine. Therefore, plaintiffs revoca-tory action must fail.
|inPlaintiffs other remedy is governed by La. C.C. art. 524. Article 524 provides, in part:
The owner of a lost or stolen movable may recover it from a possessor who bought it in good faith at a public auction or from a merchant customarily selling similar things on reimbursing the purchase price.
La. C.C. art. 523 provides:
' An acquirer of a corporeal movable is in good faith for purposes of this Chapter *866 unless he knows, or should have known, that the transferor was not the owner.
In Brown and Root, Inc. v. Southeast Equipment Co., Inc. 470 So.2d 516, 517 (La.App. 1st Cir.1985), the court considered the effect of articles 523 and 524 on the rights of a good faith purchaser against the owner of a stolen movable. In Brorni and Root, the court held:
These articles reflect a change in public policy, as enunciated by the legislature, to the effect that the good faith purchaser of a stolen movable is to be protected at the expense of the true owner.
In Brown and Root, the purchaser bought a stolen Caterpillar loader from an equipment dealer. The original owner located the loader and had it seized from the purchaser. The original owner then sued the purchaser. The question presented was whether the purchaser was in good faith. At trial, the original owner showed that the price was low and that the serial number plate on the front of the vehicle had been glued on and the manufacturer’s secret serial number under the identification number plate had been gouged out of the metal frame.
Despite this evidence, the appellate court affirmed the trial court’s decision that the buyer was in good faith because the tampering was concealed, the purchase was made from an equipment dealer, and other equipment was for sale at the establishment at similar or lower prices. In Southeast Equipment, the purchaser’s good faith was not at issue.
| -i-|Under La. C.C. art. 523, Creamer was in good faith unless he knew or should have known that R.C.E. was not the owner. Steven Crosby testified that Louisiana Lift usually puts a sticker “that has our name and number” on the machine but did not recall whether the forklift in question had this sticker. There was no testimony that the sticker, if it was on the machine, indicated that the lift was the property of Louisiana Lift. Mr. Creamer said that the machine bore no indicia either that it was leased, or of the identity of the true owner. As noted, Mr. Creamer testified that he had a friend in the equipment business check to see if the machine had a lien against it; no evidence was introduced to show that such a lien existed in the records of the district court.
Mr. Creamer further testified about the appearance of Mr. Eizel’s business at the time of the sale:
A: He had a nice place of business over there, nice building, nice enclosed fenced yard with a bunch of equipment and pallet racks and whole business full of stuff over there.
Q: He had other equipment there that you could see?
A: Yes, sir.
Q: In fact he had a sign out there ... RCE Equipment?
A: Yes, sir.
Steven Crosby gave similar testimony. The mere fact that Eizel was liquidating his business is insufficient on this record to show that Creamer should have known that Eizel did not own the forklift.
According to La. C.C. art. 524, Louisiana Lift may recover the forklift from Creamer Furniture on reimbursing the purchase price. Because the article is permissive, we believe that the best remedy in this case is to allow representatives of Louisiana Lift to inspect the forklift and determine whether they want to recover the machine.
hgWe note the confusion in the record as to the amount of the purchase price. Mr. Creamer testified:
Q: Can you tell the Court why you would list the price of the forklift as $9,500.00 in your invoice and it’s $9,000 in the bill of sale if they were done on the same day?
A: Yes, sir .... $600 worth of stuff was bought over here. You are the one that put $9,500 in your papers.
We therefore find that the purchase price was $9,000.00.
*867 Because we decide the case on the aforementioned grounds, we do not reach appellant’s argument under La. R.S. 10:1— 201(37) that Louisiana Lift’s failure to file a UCC-1 financing statement precluded judgment in plaintiffs favor.
CONCLUSION
For the reasons just discussed, we hereby reverse the judgment of the trial court. We remand this case to the trial court with instructions to issue an order allowing representatives of Louisiana Lift and Equipment, Inc. to inspect and examine the forklift for purposes of determining whether to exercise its right under Article 524 to recover the forklift on reimbursing the purchase price. Costs of this appeal are assessed 75% to Louisiana Lift and Equipment, Inc. and 25% to Creamer Brothers, Inc.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CARAWAY, J., dissents with written reasons.
BROWN, J., dissents for the reasons assigned by Judge CARAWAY.